**In the Matter of J. Mortimer GREENE, a/k/a J.M. Greene, Jack M. Greene and Debra Susan Greene, a/k/a Debra Susan Dreher, Debra Elizabeth Dreher, Debtors.**

### FIRST NATIONAL BANK OF FLORIDA, Plaintiff,

v.

**J. Mortimer GREENE, a/k/a J.M. Greene, Jack M. Greene, Defendant.**

Bankruptcy No. 85–959.
Adv. No. 85–192.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 26, 1986.

Thomas B. Mimms, Jr., Tampa, Fla., for plaintiff.

Jerry M. Nelson, Bartow, Fla., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION.

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 7 case is an adversary proceeding in which the First National Bank (Bank) seeks a determination of the dischargabililty of debt owed to First National of Florida by J. Mortimer Greene, the Debtor involved in this Chapter 7 case. In its two count complaint the Bank alleges that the Debtor (Debtor) obtained a loan from the Bank through fraud and false pretenses. Therefore, by virtue of 11 U.S.C. § 523(a)(2)(A) and (B), the Debtor's obligation to the Bank should be excepted from the general discharge. The facts relevant as they appear from the record established at the final evidentiary hearing are as follows:

In late February or early March 1985 the Debtor and his wife, Debra Greene, applied for a $25,000 loan from the downtown Tampa branch of the Bank. This loan was

sought in order to consolidate all their debts owed by them. The Greenes filled out a credit application and a financial disclosure statement, on which they listed all debts they currently owed. In a few days a loan officer from the Bank told them that their application had not been approved.

After being told that the $25,000 loan had not been approved by the downtown branch, on March 5, 1985, the Debtor contacted William L. Boyd, senior vice-president of the installment loan department at the Westshore branch of the Bank and inquired about a $5,000 loan. Mr. Boyd had arranged a loan for the Debtor previously and was familiar with the Debtor's credit history. Mr. Boyd instructed the Debtor to come by the Westshore branch office and fill out a loan application. The same day the Debtor went to the Westshore office and filled out the loan application on which he stated that he had assets of approximately $190,000 and liabilities of approximately $60,400. He also stated that the purpose of the loan was to make home repairs. Upon completing the application and returning it to Mr. Boyd, the Debtor was immediately given a check for $5,000. The Debtor used the loan proceeds to pay $3,000 in alimony arrearages owing to his ex-wife and $2,072 attorney's fees owing to his ex-wife's attorney. After making only four payments to the Bank, the Debtor defaulted on the loan, and on April 19, 1985, the Debtor and his wife filed their petition under Chapter 7 of the Bankruptcy Code.

The claim of nondischargeability asserted by the Bank is based on Section 523(a)(2)(A) and (B), which govern exceptions from discharge and provides as follows:

(a) A discharge under § 727 ... of this title ... does not discharge an individual debtor from any debt ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

Case law interpreting this section of the Code has been traditionally strictly construed, requiring the creditor to prove each and every element by clear and convincing evidence. *See, i.e., In re Hunter,* 780 F.2d 1577 (11th Cir.1986).

The Bank contends that it has met its burden of proof by showing that the Debtor made material false representations to the Bank with the specific intent to deceive the Bank and that the Bank reasonably relied on these representations in making the loan. On the other hand, the Debtor asserts that although there were misrepresentations on the credit applications, he had no intent to deceive, and the Bank had previously been given loan applications on which the Debtor had fully disclosed his financial condition. More importantly, the Bank did not rely on the credit application at all when the loan was made, but rather on the Debtor's credit history.

There is no doubt that the March 5, 1985, credit application submitted by the Debtor to Mr. Boyd at the Westshore branch office was false in several respects. The application reflected that the Debtor had assets of $190,000 and liabilities of $60,400, representations that the Debtor admits were wholly inaccurate. The application omitted substantial liabilities and misstated the Debtor's assets by at least $100,000. Furthermore, the credit application was also misleading in that it misstated the purpose of the loan. The Debtor represented on the application that the purpose of the loan was for home repairs when, in fact, it was intended to be used and actually was used

to pay arrearages in alimony due the Debtor's ex-wife.

Notwithstanding the materially false statements made on the credit application, this Court is satisfied that the Bank has failed to carry its burden of proof in its claim of nondischargeability because it has failed to establish, by clear and convincing evidence, that it reasonably relied on the materially false statements in making the loan. The testimony of all witnesses indicated that the decision to loan money to the Debtor was made before the application was completed and that the Bank relied on the Debtor's past repayment record and his credit history and not on the application. The evidence that the Bank relied on the application is, at best, in equilibrium with the evidence that there was no reliance on the application. Therefore, the degree of proof presented by the Bank falls far short of the clear and convincing standard necessary to sustain its burden under § 523(a)(2)(A) or (B). Based on the foregoing, the claim of the Bank cannot be sustained. A separate final judgment shall be entered in accordance with the foregoing.